GRANT, ALEXANDER & COMPANY, plaintiffs in error, *vs.* THE SAVANNAH, GRIFFIN AND NORTH ALABAMA RAILROAD COMPANY, defendant in error.

[TRIPPE, J., having been of counsel, did not preside in this case.]

1. Where a contract between a railroad company and contractors provided that the chief engineer of the company should be the inspector of the work, and determine when the contract had been complied with ; that all disputes and differences should be adjusted by him, and his decision should be conclusive without further recourse or appeal ; that should the work, in the opinion of the engineer, not progress in such manner as to insure its completion by the time stipulated, the said engineer, after giving ten days' notice, might proceed to have the work executed by hiring men, or by sub-contracting such portions thereof as he might deem necessary to insure its completion, at the expense of the contractors :

*Held*, that said engineer was made the arbitrator of the rights of the parties under the contract, and his decision was as conclusive and binding as the award of any other arbitrator, and could only be attacked for fraud or some other ground of illegality recognized for that purpose.

2. If the engineer failed to give the ten days' notice to the plaintiffs, as the work was progressing, prior to the time at which it was to be completed, and the company failed to avail itself of the privilege which it had, by the terms of the contract, to insure the completion of the work by that time, and allowed the plaintiffs to proceed with the work under the contract, making monthly estimates therefor, and if, when the work was completed, the engineer made a final estimate of the work, and if, in making such final estimate, he certified that it was finished according to the contract, with the exception of certain specified

Grant, Alexander & Company *vs.* The Savannah, etc., Company.

deductions made therein, then such acts and conduct on the part of the defendant would, in contemplation of the law, be a waiver of any claim for damages against the plaintiffs, under the contract, for not completing the work by the time stipulated therein, and the defendant would be estopped from claiming damages therefor.

Railroads.   Arbitrament and award.   Waiver.   Estoppel. Contracts.   Before Judge HALL.   Spalding Superior Court. May Adjourned Term, 1873.

For the facts of this case, see the decision.

NISBET & JACKSON; WHITTLE & GUSTIN; DOYAL & NUNNALLY, for plaintiffs in error.

B. H. HILL & SON; PEEPLES & HOWELL; A. W. HAMMOND & SON; BOYNTON & DISMUKE; SPEER & STEWART, for defendant.

WARNER, Chief Justice.

This was an action brought by the plaintiffs against the defendant to recover a sum of money alleged to be due them as railroad contractors, on the following contract:

"Articles of agreement made and concluded this twentieth day of October, one thousand eight hundred and sixty-nine, between the engineer of the Savannah, Griffin and North Alabama Railroad, for the company, on the one part, and Grant, Alexander & Company, on the other part, whereby it is covenanted and agreed as follows:

"The said Grant, Alexander & Company, on their part, covenant and agree to finish all the work on the Savannah, Griffin and North Alabama Railroad, between Griffin and Newnan, embracing masonry and foundations for Head's, White Water and White Oak creeks; all the first-class Howe truss-bridges over Flint river, White Water, Line, Griffin, White Oak and Turkey creeks; build all culverts that may be required, and repair those that may be in bad order; lay the track; remove all slides and clear out all ditches, com-

mencing opposite the west side of the Macon and Western Railroad ticket office at Griffin, and ending at the crossing of the Savannah, Griffin and North Alabama Railroad of the Atlanta and West Point Railroad, at Newnan—all to be done in accordance with specifications and instructions of the chief engineer or his representatives, by or before the first of June, 1870.

"And the engineer, for his company, on his part, does covenant and agree to pay the said Grant, Alexander & Company, when the work herein contracted for shall have been faithfully executed, according to orders, at the following rates, *pro rata* of work, the same to be judged by the engineer, viz: Ninety per cent. to be paid in cash as the work progresses, and ten per cent. in stock of the company. The railroad company to furnish the necessary engine and cars for laying track, clearing out ditches, and transporting all necessary material for trestle-work, bridges, etc.

"And it is agreed, that the said Grant, Alexander & Company, party of the second part, will not let or transfer this contract, or any part thereof, without the consent of the chief engineer. And it is further agreed, that the chief engineer of the Savannah, Griffin and North Alabama Railroad Company, or some person or persons appointed by him, shall be the inspector of the said work, and determine when this contract has been complied with according to its just and fair interpretation, and the amount of the same, and all disputes and differences under it to be adjusted by him, and his decision shall be conclusive without further recourse or appeal; and should the work, in the opinion of the engineer, or his representatives, not progress in such manner as to insure the completion by the time above stipulated, the said engineer, after giving ten days' notice, may proceed to have the work executed by hiring men, or sub-contracting such portions of the work as he may deem necessary to insure its completion, at the expense of the above contractors, (Grant, Alexander & Company.)

"In witness whereof, the said parties have hereunto set

their hands and seals, this twentieth day of October, eighteen hundred and sixty-nine.

"M. CORPUT,

"Ch. Eng. S., G. and N. A. R. R.

"GRANT, ALEXANDER & CO.

"Witness : A. J. LANE.

"Approved,    A. J. WHITE,

"President S., G. and N. A. R. R.

"Macon, October, 1869."

To the plaintiffs' action, the defendant plead that the contract was not performed by the plaintiffs by the time specified therein, and claimed damages in consequence thereof, which damages the defendant sought to *recoup* against the plaintiffs, demand in the nature of a cross-action therefor.  On the trial of the case, the jury, under the charge of the court, found a verdict for the plaintiffs for $10,000 00 in the stock of·the defendant's company, (about which there was no controversy,) but allowed the defendant to *recoup* in damages against the plaintiffs the entire amount of their claim over and above the amount of stock claimed by them.  A motion was made by the plaintiffs for a new trial on the several grounds therein set forth, which was overruled by the court, and the plaintiffs excepted.

1. The plaintiffs introduced in evidence the following document, the same being the final estimate of the work done by plaintiffs under the contract by its chief engineer on the road:

"1870.  *Savannah, Griffin and North Alabama Railroad Company*
" *To Grant, Alexander & Company, Dr.*

"To completing and finishing the gradation, masonry, bridging and track-laying of the Savannah, Griffin and North Alabama Railroad from Griffin to Newnan, as per contract..$100,000 00

FINAL ESTIMATE.

"Deduct former payments......... ........ ......  ......$ 79,758 00
    "    for unfinished embankments.....·..........    100 00
    "    for unfinished rock-cut, (sec. 34,).. ........     25 00
    "    for surface culverts not built, 72 cubic
            perches, $3 00......... ........ ........    216 00—80,099 00
                                                        ——————
    "Balance due......... ......... ......... ...... ..... .......... $19,901 00

"I certify that the above estimate is correct, and that the work is fin-
ished according to contract with the exception of the above deductions.
(Signed)                    "H. S. WATT, *Engineer*."

The engineer was examined as a witness, and stated that
the final estimate was not dated, by an oversight of his, but
it was made out on the 28th of October, 1870. It appears
from the evidence in the record that the road was not com-
pleted to Newnan until about the 20th of October. The
main controlling question in this case is, what is the proper
legal interpretation of the contract made by the parties?
When a contract is written in plain unambiguous words, the
construction of it is a question for the court, and not a ques-
tion for the jury. What is the fair legal construction and in-
terpretation of the contract made by the parties for the build-
ing of defendant's road from Griffin to Newnan? The plain-
tiffs. contracted on their part to build the road in accordance
with specifications and instructions of the chief engineer of
the company or his representative, by or before the first of
June, 1870. The defendant contracted to pay the plaintiffs
therefor when the work shall have been faithfully executed
according to orders, at the following rates *pro rata* of work,
the same to be judged by the engineer, to-wit: ninety per
cent to be paid in cash as the work progresses, and ten per
cent in stock of the company—the company to furnish the
necessary engine and cars for laying track, cleaning out ditches
etc., as specified in the contract. The plaintiffs were not to
let or transfer the contract, or any part thereof, without the
consent of the chief engineer. It was further stipulated in .
the contract that the chief engineer of the company, or some
person or persons appointed by him, should be the inspector of
the work, and determine when the contract had been com-
plied with according to its just and fair interpretation, and
the amount of the same, and all disputes and differences un-
der it to be adjusted by him, and his decision shall be *conclu-
sive*, without further recourse or appeal. It was the clear in-
tention of the parties, as expressed in this contract, and such
is its legal effect, that the engineer of the company should be

the arbitrator to determine when the contract had been complied with by either party, and to adjust all disputes and differences between them under it, and his decision was to be conclusive upon them, whether the same related to the performance of the contract by the plaintiffs or the defendant. Their chosen arbitrator, by the express terms of their contract, was to determine all disputes and differences between them arising under it, without further recourse or appeal; that is to say, the engineer of the defendant was to be the arbitrator to determine when the contract had been complied with according to its just and fair interpretation, and the amount of the same, and all disputes and differences under it were to be adjusted by him, and his decision should be conclusive, without further recourse or appeal, and when said arbitrator had determined that the contract had been complied with by either party thereto, and the amount to be paid for the work done under it, the decision or award of such arbitrator was as conclusive and binding upon the parties to that contract as the decision and award of any other arbitrator or arbitrators would be under the law, and could not be attacked or set aside, unless for fraud or other grounds of illegality recognized for that purpose: *Milner & Company vs. The Georgia Railroad and Banking Company*, 4 *Georgia Reports*, 385; *The Atlanta Air Line Railroad Company vs. Mangham & Prickett*, 49 *Georgia*, 266.

2. The clause in the contract which provides that if the work, in the *opinion of the engineer*, should not progress in such manner as to insure its completion by the time stipulated, the engineer, after giving ten days' notice, may proceed to have the work executed by hiring men, or sub-contacting such portions of the work as he may deem necessary to insure its completion at the expense of the contractors, was evidently inserted therein, for the benefit and protection of the defendant. The defendant's engineer would be presumed to know the condition and progress of the work he was superintending, but there is positive evidence in the record that he did know it, and complained that the work was not progress-

ing, but he did not give the notice to the plaintiffs which he was authorized to do by the terms of the contract; the plaintiffs were allowed to go on with the work and to complete it after the first of June. The defendant now claims damages because the work was not completed by the first of June. The engineer of the defendant could have had the work completed by that time at the plaintiffs' expense, on giving the ten days' notice, if he had deemed it necessary for the interest of the company, and had thought proper to have done so, but he did not act in the matter, and left the plaintiffs to prosecute the work until they finished it in October, he continuing to make out his monthly estimates for the work done by plaintiffs under the contract up to that time. If the defendant, under a fair and just interpretation of the contract, had intended to claim damages of the plaintiffs for not completing the work by the first of June, its engineer should have given the ten days' notice within a reasonable time, so as to have enabled the plaintiffs to have acted upon it, or have completed the work itself in the manner specified in the contract, at their expense. The engineer failing to give the ten days' notice to the plaintiffs, as specified in the contract, within a reasonable time, and continuing to make out their monthly estimates for the work done under the contract, the plaintiffs had the right to believe that the defendant had waived its claim for damages under the contract for the non-completion of the work by the first of June. The defendant certainly did not seek the remedy for which it stipulated in the contract, and not having done that, the law will not allow it to resort to another, at its own option, to the prejudice of the plaintiffs who have acted upon its conduct, and completed the work after the expiration of the time. By not resorting to the remedy stipulated in the contract for its own benefit and protection, of which the plaintiffs were entitled to the ten days' notice by the engineer, within a reasonable time, they are placed in a worse position than they otherwise would have been in regard to the damages now claimed. If the ten days' notice had been given within a reasonable time, as stipulated in the contract,

the plaintiffs would have had the right to have placed an additional force on the work, and thus have reduced the expense to which the defendant might have subjected them by the employment of hands to finish it, or the amount of damages now claimed. But as this stipulation in the contract was for the protection and benefit of the defendant exclusively, it had the right to waive it if it thought proper to do so, and having waived it, it cannot resort to another remedy to recover damage for the non-completion of the work in time, when to do so would be prejudicial to the rights of the plaintiffs who have *acted* upon that waiver of the defendant. A party may waive a right, by express words, or by such acts and conduct, as in contemplation of law, will amount to a waiver. The defendant in this case, not only failed to seek the remedy stipulated in the contract for damages in not completing the work by the first of June, but allowed the plaintiffs to go on with the work after that time, making out its monthly estimates for the work done under the contract, and when the work was completed a final estimate was made by the defendant's engineer, in which he certifies there is a balance due the plaintiffs under the contract of $19,901 00, and that the work had been finished according to contract, with the exception of certain specified deductions made therein. Blackstone defines an estoppel to be, where a man hath done some *act* which estops or precludes him from averring anything to the contrary : 3 Black. Com., 308. Estoppels may arise either by matter of record, by the deed of the party, or from matter in *pais:* 1 Bouvier's Law Dictionary, 376, and authorities there cited.

This claim for damages for the non-completion of the work by the 1st of June, in view of the facts contained in the record, looks very much like it was an after-thought. It is true that White, the president of the company, states in his evidence that about the middle of June he first gave Grant, one of the plaintiffs, notice of his claim for damages on account of the payment of interest to the stockholders. Grant, in his evidence, states that he never knew of any intention to claim damages for delay in finishing the work until about the

10th of November, when he went to White's office, in Macon, for a final settlement, and then he informed him that he would not settle until his claim for damages was allowed. This was after the work had been completed by the plaintiffs. Assuming that White did give Grant notice in the middle of June, as stated by him, that was not the kind of notice stipulated for in the contract. The ten days' notice contemplated by the contract was to be given by the engineer whilst the work was progressing, prior to the 1st of June, so that the plaintiffs might take steps to complete the work by that time, or that the defendant might proceed to have the work executed, if it deemed it necessary to insure its completion by that time, at the expense of the plaintiffs. By the terms of the contract the giving of the notice was made to depend on the *opinion* of the defendant's engineer as to the progress of the work, to insure its completion by the 1st of June; *he* was the arbitrator chosen by the parties to determine that question and to give the notice.

In view of the stipulation in the contract as to the ten days' notice to be given by the defendant's engineer to the plaintiffs as the work progressed, and the rights and privileges of the defendant under it to insure the completion of the work by the time stipulated in the contract, and in view of the evidence in the record as to the waiver of the time of its completion on the part of the defendant, by its acts and conduct, the court below should have charged the jury that if the engineer of the defendant failed to give the ten days' notice to the plaintiffs as the work was progressing, prior to the 1st of June, and failed to avail itself of the privilges which it had by the terms of the contract, to insure the completion of the work by that time, and allowed the plaintiffs to proceed with the work under the contract, making monthly estimates therefor, and if when the work was completed the defendant's engineer made a final estimate of the work, and if in making such final estimate of the work he certified that it was finished according to the contract, with the exception of certain specified deductions made therein, then such acts and conduct on

the part of the defendant would, in contemplation of the law, be a waiver of any claim for damages against the plaintiffs under the contract, for not completing the work by the time stipulated therein, and the defendant would be estopped from claiming damages therefor. In our judgment, by the terms of the contract, the defendant's engineer was made the arbitrator to determine when the contract had been complied with by either party, and to determine all disputes and differences between them arising under it, and his decision in relation thereto was to be *conclusive*, and that being so, it necessarily follows that when the defendant's engineer made his final estimate of the work done by the plaintiffs for the defendant, as set forth in the record, and certified that it was correct, and that the work was finished according to contract, with the exception therein stated of certain deductions, that final estimate of the defendant's engineer was his decision and award, and was as binding and conclusive upon the plaintiffs and defendant as the decision and award of any other arbitrator or arbitrators, and the court below erred in admitting any evidence at the trial going behind that award for the purpose of showing that either party had sustained damage on account of the non-performance of the contract by either of the parties thereto. The judgment of their own chosen arbitrator was *conclusive* upon them, and the law will compel them to abide by it, unless it can be attacked for fraud or other recognized ground of illegality for setting aside an award. The view which we have taken of this case renders it unnecessary for us to express any opinion as to the rule of damages given in charge by the court to the jury.

Let the judgment of the court below be reversed.